UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES VANDEVENDER,<br>        Plaintiff<br>v.<br><br>Captain WALTER SASS; Lieutenant SAMMY BURCH; Sergeants CHRIS WHITE and TREVOR SASS; Correctional Officers DUWAYNE DAHL and JOSHUA BURDINE, in their individual capacities; RICK BIBEAU and other UKNOWN EMPLOYEE OF MN CORRECTIONAL FACILITY INDUS, d/b/a MINNCOR *INDUSTRIES*, in their individual capacities,<br>        Defendants, | Case No:18-CV-00607<br>(DWF-KMM)<br><br>PLAINTIFF'S FIRST<br>AMENDED COMPLAINT |

**James Vandevender, through his attorneys Phillip F. Fishman and Rachel Petersen, hereby brings this First Amended Complaint against the above named Defendants.**

Plaintiff James Vandevender, herein Plaintiff, was violently assaulted with a contraband weapon by a fellow prison inmate while housed in the custody of the MN DOC at its Rush City, Minnesota facility for adult offenders. The assault upon Plaintiff involved the use of one of several wooden boards that were not properly secured in violation of one or more Prison Instructions and Directives as alleged below. The inmate who struck Plaintiff was Mark David Latimer; he had a history of violence against prison staff and other third persons. The Rush City correctional staff assigned to the prison industry area including officers and MINNCOR Industries employees were each aware of the substantial risk of such attack, but failed to take the necessary steps to secure the prison in order to provide for the safety of Plaintiff thereby allowing violence within the prison and cultivating an environment which invited and condoned inmate on inmate violence. As a result, Plaintiff was deprived of his constitutional right to

1

serve his prison sentence without constantly fearing for his life and safety. This is an action under 42 USC § 1983 for the purpose of having declared and adjudged unconstitutional, the actions of the Defendants with respect to the inadequate protection provided to the Plaintiff during his incarceration as well as an action in negligence.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's claims pursuant to 42 USC § 1983, 28 USC § 1343 (a) (3) and 28 USC § 1331 in that this is a civil suit arising under the Constitution of the United States. The Court has jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. §1367.

2. Venue is appropriate in this Court pursuant to 28 USC section 1391(b) (2) because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within the District of Minnesota.

3. Plaintiff's claims for attorney's fees and costs are predicated upon 42 U.S.C. § 1988, which authorize the award of attorney's fees and costs to prevailing parties pursuant top 42 U.S.C. § 1983.

4. Venue is proper in the United States Federal District pursuant to the provisions of Title 28 U.S.C. § 1391(b) in that this is a civil action wherein jurisdiction is not founded solely on diversity of citizenship; the Plaintiff was incarcerated at Minnesota Correctional Facility-Rush City, (hereinafter MNCF-Rush City). At all times relevant herein to this Complaint, and upon information and belief, the Defendants, work and reside within the district.

## III. EXHAUSTION

5. Plaintiff has exhausted all available administrative prison remedies regarding the matters described in the Complaint.

## IV. PARTIES

6. Plaintiff James Vandevender is a 31 year old male inmate now in the custody of MNCF-Faribault-Facility and he was an inmate at the Rush City facility on June 8th 2012 when the assault occurred.

7. Under Minnesota state law, the Minnesota Department of Corrections (hereinafter MNDOC) is responsible for the policies, procedures, and practices implemented by its various agencies, agents, departments, employers, and for injuries occasioned thereby. Under the veil of MNDOC is MN CORRECTIONAL FACILITY INDUS.,d//b/a, MINNCOR INDUSTRIES ("MINNCOR"). All Defendants listed in this complaint worked for MNDOC or MINNCOR.   /

8. Defendant Captain Walter Sass, at all times hereinafter mentioned worked at MNDOC in Rush City and, as such, had jurisdiction and control of the government, administration, and discipline at Rush City.  Defendant Sass caused created authorized condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional and inhuman actions, policies, customs and practices that prevailed at Rush City. He has, therefore, directly and proximately caused many of the damages, injuries, and violations set forth below.  The captain serves as the chief security officer in the correctional facility, and, as such, and was accountable for the protection of the public, staff, and offender safety. He was additionally responsible for anticipation of events that affect the facility's security. Sass had actual knowledge that prison inmates faced substantial risk of bodily harm and assaults from misuse of other maintenance materials and other tools as weapons; said risk is evident on the face of the tool control policy as alleged below. Additionally, he had actual knowledge that boards were being stored in the industry area, that said boards were in easy access of inmates and unsecured on the date of the assault. Sass is being sued in his individual capacity for damages for his failure to protect inmates like Plaintiff

from a pervasive risk of harm from assaults by other inmates who gain unauthorized access to contraband weapons.

9. Defendant Sammy Burch, at all times hereinafter mentioned, worked at MNDOC in MNCF-RUSH CITY and, as such, had jurisdiction and control of the government, administration, and discipline at Rush City. Defendant Sass caused created authorized condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional and inhuman actions, policies, customs and practices that prevailed at Rush City. He has, therefore, directly and proximately caused many of the damages, injuries, and violations set forth below. Mr. Burch is and was a Lieutenant at Rush City and responsible for a full range of supervisory responsibilities for a staff of correction officers in a designated unit or particular work shift at the Rush City facility. As such, Burch was responsible for coordinating all security and program functions, including policy interpretation and development for the units supervised. Burch had actual knowledge that prison inmates faced substantial risk of bodily harm and assaults from misuse of other maintenance materials and other tools as weapons; said risk is evident on the face of the tool control policy as alleged below. Additionally, he had actual knowledge that boards were being stored in the industry area, that said boards were in easy access of inmates and unsecured on the date of the assault. He is being sued in his individual capacity for damages due to his failure to protect inmates including Plaintiff from a pervasive risk of harm from assault by other inmates with contraband weapons. Defendant Burch, as unit lieutenant, is and was the primary staff person to implement and ensure compliance with the MN DOC "tool control" instruction set out in paragraph 19 of the Complaint.

10. Defendant Chris White (hereinafter "White") was the industry officer in the Rush City Facility on June 8, 2012. White had actual knowledge that prison inmates faced a substantial risk of bodily harm and assaults from misuse of maintenance materials and other tools as weapons; said risk is

evident on the face of the tool control policy as alleged below. Additionally, each of these defendants had actual knowledge that boards were being stored in the industry area and that said boards created a substantial risk to inmate security.

11. Trevor Sass was the industry officer in the Rush City facility on June 8, 2012. Trevor Sass had actual knowledge that prison inmates faced a substantial risk of bodily harm and assaults from misuse of maintenance supplies and other tools as weapons; said risk is evident on the face of the tool control policy as alleged below. Additionally, each of these defendants had actual knowledge that boards were being stored in the industry area and that said boards created a substantial risk to inmate security.

12. Defendant Correction Officers DuWayne Dahl and Joshua Burdine were also assigned to the North Industry area on June 8th 2012. At all times hereinafter mentioned in the Complaint, each of the named defendants had actual knowledge that prison inmates faced a substantial risk of bodily harm and assaults from misuse of maintenance supplies and other tools as weapons; said risk is evident on the face of the tool control policy as alleged below. Additionally, each of these defendants had actual knowledge that boards were being stored in the industry area and that said boards created a substantial risk to inmate security. Further, each defendant was responsible for ensuring a safe and secure environment for the persons who work, visit, or reside within the institution. Each of these Defendants were aware of all tool control directives and post orders. These Defendants are being sued in their individual capacity due to their individual failure to protect Plaintiff from assault by other inmates with contraband weapons.

13. Upon information and belief, Defendant Rick Bibeau, MINNCOR employee was employed by Defendant MINNCOR and thereby worked at Defendant MNCF-Rush City, and as such had jurisdiction and control of the government, administration, disposition, and discipline of agents of MNCF-Rush City, the staff and inmates thereof. Defendant, Rick Bibeau MINNCOR employee caused,

created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies and practices that prevailed at MINNCOR and MNCF-Rush City. He has, therefore, directly and proximately caused many of the damages, injuries, and violations set forth below. Another unknown MINNCOR employee also believed to have the last name "Bibeau" also worked at MNCF-Rush City at the times alleged in this complaint. At all relevant time this Unknown employee of MINNCOR had jurisdiction and control of the government, administration, disposition, and discipline of agents of MNCF-Rush City, the staff and inmates thereof. Defendant, Rick Bibeau MINNCOR employee caused, created, authorized, condoned, ratified, approved, or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies and practices that prevailed at MINNCOR and MNCF-Rush City. He has, therefore, directly and proximately caused many of the damages, injuries, and violations set forth below.

14. At all times relevant to the facts alleged in this Complaint, all of the above named Defendants acted under color of state law.

## V. FACTUAL ALLEGATIONS

15. The allegations contained in the previous paragraphs 1-14 of the Complaint are re-alleged as if fully set forth herein.

16. The MN DOC facility at Rush City, Minnesota is a close security prison operated by the MN DOC. It was opened in February 2000 and has a population of 988 inmates and a staff of 350.

17. The MN DOC Rush City, Minnesota, along with the DOC's other adult correction prisons have been plagued with inmate on inmate and inmate on staff assaults for many years. The MN DOC's Annual Report for fiscal years 2011 and 2012 contained the following data:

|  | FY 2011 | FY 2012 |
|---|---|---|
| Assaults on inmates | 677 | 771 |

| | | |
|---|---|---|
| Assault on inmate causing harm | 80 | 52 |
| Assault on inmate w/ weapon | 27 | 23 |
| Assault on staff | 81 | 71 |

18. Upon information and belief, the MN DOC including the Rush City prison, has written and enacted many current policies, Instructions and Directives pertaining to proper control of weapons and contraband within the several correctional facilities. The 4x4 board used by inmate Latimer to assault Plaintiff is considered a weapon under the tool control policy. Following the assault on Plaintiff, Discipline Officer Lt. Andrew Darling MN DOC- Rush City, told the Chisago County Attorney that "there was a variety of other weapons in the industry area that Defendant {Latimer} could have used that would have inflicted less damage."

19. All of the above-referenced correction officers and employees are trained and educated about the importance of maintaining safe tool control in a prison setting. The MN DOC website lists four (4) "Instructions" and sixteen (16) Security Instructions Instruction 301.040 "Tool Control", in part, provides as follows:

> "PURPOSE: To provide a process to inventory controlled items and for the safe disposal of contraband items in a manner so that offenders cannot gain access to them."
> DEFINITION: <u>Controlled items</u>- any non-tool item that maybe dangerous if misused or any item requiring additional control for safety and security reasons. For the purpose of this instruction, tools may also be controlled items.
> PROCEDURES:
> A.      All areas/individuals having controlled items in their work area are responsible to maintain and inventory of those controlled items. A list of all controlled items will be maintained by the area lieutenant. Each area is responsible to report any changes of controlled items to the area lieutenant.
> B.      Disposing of controlled items
>      1. Each unit of MCF-WRML must have a secure area for disposal of controlled items. Staff 2In the event that a tool has been broken or is in need of disposal, staff must place the tool in a controlled item waste receptacle.

*2. For items needing immediate disposal, staff must contact the squad officer in charge (OIC) and request that the item(s) be disposed. Squad reports to the area and removes the controlled items. Staff picks up all other items on a weekly.*

20. MN DOC policy 300.045 subd 4 Tool Control is similar to the above and is in effect and requires regular inventory count and mandates that tools must be kept under observation when in use and secured in a locked gang box, room, or vehicle when not in use. Upon information and belief, said policy was violated by each and every defendant on and prior to June 8th 2012 at the Rush City facility.

21. Upon information and belief, current MN DOC-Faribault inmates "N-A", "N-C" and "T-B" were also confined at the Rush-City facility and familiar with the operation and tool and wood storage procedures in the wood working industry area on and prior to the day of the assault on Plaintiff. Inmate "N-A" was assigned to the wood working area and believes that the boards similar to that the one used by Latimer to strike Plaintiff were scraps and remnants of wood used repeatedly to brace wooden pallets used in the wood working area of the Rush City North Industry area. Inmate "N-A" was told and verbally instructed many times by both MN DOC defendants and MINNCOR defendant employee Rick Birbeau to store the wooden scraps and boards on an open, unsecured shelf or under his work bench in the North Industry area. Inmate "N-A" further claims that the wood working area was not operating on the date of the assault, but that pieces of wood were left unguarded, unsecured and open to all inmates. On prior work days, correctional staff and Defendant were in the vicinity of the various storage areas, but not present on June 8th 2012.

22. Inmate "N-C" claims that he was also instructed to return the wooden scraps and lumber boards{identical to that used by Latimer to strike Plaintiff} to the open, unguarded and unsecured shelf in the North Industry area. Upon information and belief, he claims that a year or two prior to the assault on Plaintiff, another inmate know as Michael Simon was brutally assaulted by another inmate with a

wooden handle of a pitchfork in another working area of the Rush City prison. The injured inmate suffered serious head injuries inflicted by the piece of wood.

23. Inmate, "T-B", as mentioned above, was also personally familiar with the storage of wood in the North Industry area of the Rush City facility. Upon information and belief, "T-B" actually complained to one or more of the correctional officers and MINNCOR employees that in his view, the open pile of wood was a threat to the health and safety of all of the inmate population and could be used as a weapon upon him and other inmates. He was told to not worry about it as the matter was not his business. He made his complaint about inmate safety prior to June 8th 2012.

24. Each of the above-named Defendants named in paragraph of this Complaint had actual knowledge and were familiar with the stream of violence which pervaded most adult correctional prisons throughout the United States as well as the stream of violence present in the prison facilities operated by the MN DOC, including the Rush City facility. Further, the existence of sixteen (16) specific Instructions and directives regulating tool and weapon control alleged in paragraph 19 above, demonstrates that the Defendants working at Rush City were, at all times relevant to this Complaint, consciously aware of the "substantial risk" of an inmate on inmate attack with contraband weapons if tools were not properly stored and maintained.

25. For a number of months prior to June 8, 2012, a 4x4 board along with several similar-sized boards and other, wooden scraps were stored in the North Industry area of Rush City Prison in an open, unsecure low level shelf in open view of all inmates. During this time frame, inmate Mark Latimer reported that he observed the wooden boards on several occasions while he was in the vicinity Said individual named Defendants individually acted with deliberate indifference to Plaintiff's and other inmates' safety by allowing the boards to sit on an open shelf in violation of the multiple tool control directives.

26. On June 8, 2012, Plaintiff was seated at a table working in the North Industry area of the prison assembling balloons. Prison video footage recorded in the North Industry area on June 8th 2012 demonstrates inmate Latimer, strolling in a leisurely pace with a 4x4 wooden board and then striking Plaintiff from behind six (6) times in the head and shoulder area. Subsequent to the assault, Plaintiff became unconscious and was ultimately transported to Regions Hospital in St. Paul, Minnesota for emergency medical care and treatment. Inmate Latimer has since given a sworn affidavit confirming that he obtained the contraband wooden board used in the assault from an open, unsecured shelf left unguarded by any named defendant immediately prior to the assault.

27. Video footage taken on the day of the assault also revealed that Latimer walked through the area, set down the wooden board, and then walked towards another location. Within a few seconds, Latimer returned to the prior location and picked up the wooden board and carried it several hundred feet to the balloon assembly area where he assaulted Plaintiff.

28. At the time of Plaintiff's admission to Regions Hospital in St. Paul, MN, Plaintiff presented with altered mental status, skull fracture, cerebral contusion, brain injury, acute respiratory failure, closed skull based fx/cereb lacerations. Additional problems he suffered while hospitalized included, pneumonia, agitation, traumatic brain injury and neck swelling. Medical records indicate that Plaintiff had a final diagnosis of depressed skull fracture, a traumatic brain injury with hemorrhagic contusion, right maxillary fracture, depressed anterior wall of maxillary antrum, along with multiple other medical injuries documented in the Plaintiff's various medical records. Plaintiff's multiple injuries are permanent and will require life- long medical care and treatment; Plaintiff has recently been diagnosed with a seizure disorder stemming from the beating. All of these injuries occurred as a direct and proximate result of the assault by inmate Latimer.

29. Latimer was criminally charged under several Minnesota Criminal Statutes with Attempted Murder in the First Degree; attempted Murder in the Second Degree; and assault in the First Degree. Following a court trial in the Chisago County District Court, State of Minnesota, and Latimer was convicted on all three (3) charges on June 22, 2015. Latimer is now serving a life sentence in the MN DOC Oak Park Heights prison.

## VI. CLAIMS FOR RELIEF

**I. FIRST CAUSE OF ACTION: 42 U.S.C. §1983 CRUEL AND UNUSUAL PUNISHMENT**

30. The allegations contained in paragraphs 1 through 29 of the Complaint are re-alleged as if fully set forth herein.

31. This claim arises under Title 42 of the United States Code,§ 1983. The actions of the Defendants were taken under color of law with regard to Plaintiff and constitute state action "under color of law" as defined by 42 U.S.C.§ 1983. All of the named defendants, through their policies, practices, acts and omissions complained of herein exhibited deliberate indifference to a pervasive risk of serious harm to Plaintiff, in violation of his rights to be free from Cruel and Unusual Punishment pursuant to the Eight and Fourteenth Amendments to the United States Constitution.

32. All of the named defendants, through their policies, practices, acts, and omissions complained of herein subjected Plaintiff to unnecessary and wanton infliction of pain and emotional and physical injury in violation of the Eight and Fourteenth Amendment to the United States Constitution.

33. With deliberate indifference to the substantial risk of serious harm to the Plaintiff, said Defendants failed to: (a) follow all pertinent tool control directives and policies as previously alleged; (b) provide supervised monitoring of the open shelf of dangerous tools and weapons on and for many weeks prior to June 8th 2012;(c) appropriately select, train, assign and supervise staff to follow and to enforce the tool control policy and secure the boards from inmate access thereby, subjecting the Plaintiff

11

to violent assault/s by other inmates with contraband weapons. This deliberate indifference caused Plaintiff continual fear for his personal safety in violation of the Eighth and Fourteenth Amendment of the United States Constitution.

34. With deliberate indifference to the substantial risk of serious harm to Plaintiff, Defendants further failed to adequately and constitutionally confiscate contraband and weapons from Latimer prior to the actual assault in the North Industry area of the Rush City facility in violation of the Eighth and Fourteenth Amendment of the United States Constitution.

35. Further, Defendant Correction officers and MINNCOR employees were willfully and deliberately indifferent to Plaintiff's safety by

(a). failing to adequately intervene and prevent the attack by Latimer as he entered an "unauthorized" area of the prison and then carried a contraband tool in open and clear view of several correctional officers named as defendants through the work area;

(b). allowing inmates to move from their assigned area to unauthorized and unguarded areas where they could pick up wooden scraps and boards to be later used to attack other inmates;

(c). allowing and/or providing inmates access to wooden boards or like weapons;

(d). allowing inmates freedom of movement in unauthorized areas knowing that Latimer's classification and history suggested that he posed a threat to staff and inmates such as Plaintiff;

(e). keeping a large amount of prisoners in the North Industry area of the prison without the presence of a sufficient number of guards and thereby failing to prevent attacks or to rescue inmates should such attacks occur.

36. As a direct and proximate cause of the Defendants' conduct, inaction, official policy as set forth above, Plaintiff's constitutional rights, as articulated in the Eight and Fourteenth Amendments, were violated and he has suffered and will continue to suffer damages, plus attorney fees and costs incurred herein.

## SECOND CAUSE OF ACTION: NEGLIGENCE

37. Plaintiff re-alleges and incorporates by reference as though fully contained herein, the allegations set forth in Paragraphs 1 through 36 above.

38. The Defendants breached their duty to keep the inmates safe from substantial bodily harm through their negligence carelessness, and recklessness, in several ways, including:

(a) In refusing to protect Plaintiff from a foreseeable risk to his physical safety while under the Defendants "supervision"

(b) In failing to hire and supervise trained personnel to properly deal with the foreseeable safety concern as specifically alleged above, and

(c) Being otherwise careless, negligent and reckless and acting unreasonably under the circumstances.

39. As a direct and proximate cause of the negligence of Defendants, Plaintiff has and will suffer damages for his many permanent injuries; plaintiff will also suffer future wage loss, past and future pain and suffering and he will require life-long medical care and treatment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays the Court for judgment and relief as follows:

1. Award Plaintiff compensatory and punitive damages in an amount to be determined against each Defendant, jointly and severally together with such other and further relief as the court deems just, proper and equitable.

2. Award Plaintiff the costs and disbursements of this action, including reasonable attorney fees pursuant to 42 § USC 1988.

Respectfully Submitted,

/s/ <u>Phillip F. Fishman</u>
Attorney for Plaintiff James Vandevender
Lumber Exchange Building #1005
10 South 5th Street
Minneapolis, MN 55402
Phone: 612-722-0276
Fax (612) 344-1220
MN. Bar No. 29622

/s/ <u>Rachel Petersen</u>
Attorney for Plaintiff James Vandevender
Lumber Exchange Building #1005
10 South 5th Street
Minneapolis, MN 55402
Phone: 612-729-2009
Fax (612) 344-1220
MN. Bar No. 0391476